**Francis WEBBER, Plaintiff,**

v.

**Dr. HAMMACK, Clinton Correctional Facility; J.M. Siskavich, R.N. Clinton Correctional Facility; R.W. Spence, Asst. Health Services Administrator, Clinton Correctional Facility; D.E. Sheridan, M.D., Clinical Director, Clinton correctional Facility; Dr. Quellman, Dr. Rosner, Shawangunk Correctional Facility; Dr. Goldman, Shawangunk Correctional Facility; Dr. Tufau, Sullivan Correctional Facility, Defendants.**

**No. 90–CV–72 (FJS)(GJD).**

United States District Court, N.D. New York.

July 31, 1997.

Herrmann, Pelagallilaw Firm, Clifton Park, NY, for Plaintiff; Paul Pelagalli, of counsel.

Dennis C. Vacco, Office of the Attorney General, State of New York, The Capitol, Albany, NY, for Defendants; Anthony B. Quartararo, of counsel.

## MEMORANDUM-DECISION AND ORDER

SCULLIN, District Judge.

### Introduction

Plaintiff, Francis Webber, brings the present civil rights action pursuant to 42 U.S.C. § 1983 against the Defendants, who are comprised of various medical personnel employed by the New York State Department of Corrections ("NYSDOC"). The Plaintiff, currently incarcerated by the NYSDOC, alleges that the medical treatment he received from the above-captioned Defendants over a period of three years at Clinton Correctional Facility ("CCF"), Shawangunk Correctional Facility ("SCF"), and Sullivan Correctional Facility(" SUCF") violated his constitutional rights as guaranteed by the First, Eighth, and Fourteenth Amendments. Additionally, Plaintiff brings an unspecified pendant state claim alleging a violation of NYDOC regulations. Presently before the Court is (1) a motion by the Defendants to dismiss the claims against Defendants Sheridan and Hammack for lack of personal jurisdiction, and (2) a motion by the Defendants for summary judgment on all of Plaintiff's claims, for failure to state a claim upon which relief can be granted or, in the alternative, on the ground of qualified immunity.[1]

### Factual Background

Because the complaint contains broad allegations about inadequate treatment over a period of three years from November 1986 to November 1989, this factual background contains a fairly detailed summary of the Plaintiff's course of treatment. This factual summary is based on the medical records offered by both parties.

The Plaintiff injured his left knee while playing football at CCF on November 9, 1986. Plaintiff was taken to the prison hospital where he was examined by Defendant Siskavich, a registered nurse. Nurse Siskavich elevated his leg, applied ice to reduce the swelling, and placed a call to a Dr. Lee. Dr. Lee ordered the Plaintiffs admission to the hospital, an x-ray, immobilization of the knee, and prescribed Motrin for the pain. (Def. Ex. A at 2). The Plaintiff, however, refused to be hospitalized and signed a "refusal of treatment" waiver. (Def. Ex. A at 3). Plaintiff returned to the prison hospital ward the next day on November 10, 1986 and received an x-ray which showed fluid on the knee, but no fracture or discoloration. (Def. Ex. A at 6). Plaintiff was prescribed 500 mg of Dolobid and three days of bed rest. *Id.* On November 13, 1986, Plaintiff was re-examined, prescribed Dolobid again, and referred to an orthopedic specialist. The following day, the Plaintiff was examined by Defendant Dr. Quellman, an orthopedic specialist, who ordered immobilization of the Plaintiff's knee and noted the need for a hinged brace.

On November 25, 1986, the Plaintiff was provided with a non-hinged knee brace for his knee. (Def. Ex. A at 8). On December 9, 1986, Plaintiff returned to sick call complaining of pain. He was given pain medication and referred for a second orthopedic consult. (Def. Ex. A at 10). On December 11, 1986, the Defendant received a second orthopedic consult from a Dr. Lorige who recommended he be provided with a "Lennox–Hill" knee brace, which is a custom made knee brace made at Lennox–Hill Hospital. (Pl. Ex. B at 59). On December 19, 1986, Dr. Quellman examined the Plaintiff again and recommended physical therapy

---

1. Defendants do not specify the procedural ground for their present motion. However, because evidence outside of the pleadings was offered by both parties and the time period for discovery has closed, the Court assumes that the motion is brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

four times a week on a Universal weight machine. (Def. Ex. A at 12). On December 30, 1986, Defendant Dr. Sheridan, the CCF Clinical Director made a request to the facility Captain to allow the Plaintiff to utilize the Universal weight machine in the gym for the Plaintiffs physical therapy. (Def. Ex. A at 13). On February 2, 1987 the Plaintiff received his Lennox–Hill brace.

On May 18, 1987, the Plaintiff reported to sick call complaining that the brace he was provided with was not helping him with the stability of his knee. (Def. Ex. B. at 4). As a result, the medical staff requested another orthopedic consult for the Plaintiff, and Defendant Dr. Quellman reexamined the Plaintiff on August 7, 1987. Dr. Quellman recommended that the Plaintiff be examined by orthopedic personnel at Albany Medical Center for possible surgical intervention. (Def. Ex. B at 4). During this time period the Plaintiff twice requested a medical clearance to play sports, on Aug 11 and September 5, 1987. Defendant Dr. Sheridan re-examined the Plaintiff at Albany Medical Center on October 16, 1997, and recommended brace adjustments to the Plaintiff's brace including the addition of a de-rotation strap to address the Plaintiff's stability problems. (Del. Ex. B at 9). The de-rotation strap was ordered by Dr. Sheridan the next day on October 17. (Def. Ex. B at 11). Plaintiff received the de-rotation strap on December 18, 1987, the day after he was transferred to Shawangunk Correctional Facility ("SCF"). (Def. Ex. B at 12).

Upon his arrival at SCF, the Plaintiff was examined by Defendant Dr. Goldman, who arranged for another orthopedic consult for the Plaintiff (Def. Ex. B at 12). This consult took place at Helen Hayes Hospital on March 21, 1988 by Dr. Tromanhauser. *Id.* Dr. Tromanhauser recommended intensive rehabilitation including quadricep and hamstring strengthening by doing leg extensions with a Universal weight machine and wearing ankle weights during normal activities. *Id,* The recommendation called for a four month period of rehab which if unsuccessful could result in a surgical intervention *Id.* On March 8, 1988 Plaintiff received medical authorization to use the gym at SCF which contained a Universal weight machine, to conduct his exercises five times a week. (Def. Ex. C at 4).

During the months of March and April of 1988, the Plaintiff was reported playing softball twice. (Def. Ex. C at 5,6). Thereafter, the Plaintiff complained of pain in his knee during the month of May, June and July of 1988. During that time period, Plaintiff was seen on multiple occasions by either Dr. Goldman or Dr. Rosner who prescribed different types of pain medication each time to try to alleviate the Plaintiff's pain. (Del. Ex. C at 6, 7). On July 15, 1988, the Plaintiff came to sick call complaining of severe pain in his knee. He was admitted for three days, treated with codeine and Percodan and released on July 18. On July 18, the Plaintiff signed a refusal of treatment form so that he could participate in athletics even though he was advised not to SCF medical staff. (Pl.. Ex. G at 3). The very next day, on July 19, 1988, the Plaintiff was admitted to the prison infirmary complaining of severe pain in his knee. Dr. Rosner treated the Plaintiff with Robatin and extra-strength Tylenol. (Def. Ex. C at 12). Dr. Goldman discharged the Plaintiff three days later on July 22, 1988, noting on the Plaintiff's ambulatory records that the Plaintiff exhibited no signs of instability from walking around. *Id.*

The Plaintiff was treated for pain at the SCF prison infirmary on August 1, 12, 16, 17 and 26 of 1988. On August 17, Dr. Rosner requested another orthopedic consult for the Plaintiff outside of the facility. (Def. Ex. C at 16). That consult took place on August 26 at Julia Butterfield Memorial Hospital by Dr. DiMarco, who recommended a period of pre-surgery physical therapy, adjustment of the Plaintiffs brace, and temporary pain relief. *Id.* Plaintiff received pain medication twice more in August and four times in early September. (Def. Ex. C at 18, 20). On September 16, the Plaintiff advised the Facility medical personnel that he had been playing baseball the night before, and that his knee felt great. (Def. Ex. C at 20). Later, on September 17, 1988 the Plaintiff signed a refusal of treatment form refusing the order of medical keeplock for five days which

would have restricted the Plaintiff to his cell without recreation. (Def. Ex. B at 23).

The Plaintiff was treated for pain by the SCF infirmary four times during the month of October. The Plaintiff received an MRI of his knee on October 18 at Albany Medical Center which indicated no effusion on his knee. (Def. Ex. C. at 31). On November 3, 1989, the Plaintiff began out-of-facility physical therapy sessions at Horton Hospital, which occurred eleven more times in the months of November and December of 1988. (Def. Ex. D at 5–13). On December 6, Plaintiff's leg strength was evaluated by the Horton Hospital physical therapist who determined that his left leg strength was comparable to that in his right, and that the Plaintiff did not need any more out-of-facility physical therapy. (Def. Ex. D at 14, 15). Additionally, during the early part of December, the Plaintiff's medical records indicate that was seen on two different occasions playing football in the recreation yard.

In the month of January 1989, the Plaintiff was seen seven times by the infirmary staff at which time he was treated for complaints of pain in his knee. (Def. Ex. F at 1–5). On January 27, Plaintiff was examined by Dr. DiMarco at Butterfield Hospital who scheduled knee surgery for the Plaintiff in the month of March. On February 21, 1989 the Plaintiff was observed playing basketball after twice being cautioned not to by infirmary staff (Def Ex. F at 7, 8).

On March 16, 1989, the Plaintiff received surgery to repair the anterior cruciate ligament in his left leg. Throughout the months of April, May, and June the Plaintiff received post-operative care and physical therapy. (De. Ex. F at 11–20). Plaintiff received post-operative check ups by Dr. DiMarco and Dr. Nunez on March 28, April 7, and May 5. (Def. Ex. F at 11–14). After Plaintiff was transferred to Sullivan Correctional Facility ("SUCF") on May 12, 1989, Plaintiff was admitted to the SUCF infirmary and was given outside therapy nine times in June, July and the beginning of August. (Def. Ex. G at 3–5). In August, the Plaintiff complained of pain and swelling to the infirmary staff, but the Plaintiff refused to attend a scheduled orthopedic consult on September 8, 1989. (Def. Ex. F at 21–23). Plaintiff had a second orthopedic consult on October 6, at which Defendant Dr. Tufau noted that Plaintiff's recovery was not as far along as it should have been, and suggested a possible arthroscopic surgery to "revise" the previous operation. (Def. Ex. F at 26–28). That surgery was conducted on November 16, 1989 at Butterfield Hospital. Plaintiff was discharged on November 28, 1989, and he filed this action on December 3, 1989.

### Discussion

As stated, Defendant moves to dismiss Plaintiff's complaint as against Dr. Hammack and Dr. Sheridan for lack of personal jurisdiction. Additionally, the Defendants move for summary judgment on the Plaintiffs constitutional claims for failure to state a claim and on the grounds of qualified immunity. The Court will address each of these motions *seriatim.*

### I. PERSONAL JURISDICTION OVER DEFENDANTS HAMMACK AND SHERIDAN

Defendants argue that Plaintiff's claims against Defendants Hammack and Sheridan should be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failing to effect personal service of process. The docket reflects that process was returned unexecuted on Defendant Sheridan because of his death, and Defendant Hammack because he wasn't listed as an employee of the NYSDOC. The Plaintiff does not contest that these Defendants were not served, but argues that, at least with respect to Defendant Hammack, the Court should deem service to have been effected since it is undisputed from the Plaintiffs medical records that a Dr. Hammack was employed at CCF in 1986.

■ Rule 4(m) of the Federal Rules of Civil Procedure requires service of a summons and complaint on a defendant within 120 days of the filing of the complaint. If the Plaintiff fails to meet this time constraint, the Court may, upon its own initiative or motion of a party, either (1) dismiss the action without prejudice, or (2) direct that service be effected within a specified time period. *Id.*

If the Plaintiff can show "good cause" for the failure to serve, the Court shall extend time for service of process. *Id.* Additionally, in situations where a plaintiff is proceeding in forma pauperis and has been forced to rely on the U.S. Marshals for execution of service, the Plaintiff should not be penalized for the failings of the Marshals. *Romandette v. Weetabix Co.,* 807 F.2d 309, 310 (2d Cir. 1986).

■ Here, it appears that the Plaintiffs summons and complaint, and process receipt and return form listed Defendant Hammack as "Dr. Hammock." This service was returned unexecuted along with a letter from Rodney Mooney, the NYSDOC's Inmate Records Coordinator, stating that there was no record of a "Dr. Hammock" listed in the records of the CCF. (*See* Doc. No. 16). The Court finds that while return of service in this instance was technically correct, the NYSDOC should have reasonably inferred that "Dr. Hammock" employed by CCF in 1986 was referring to the Dr. Hammack who was employed by CCF in 1986. However, while the hyper-technicality of this error may have constituted "good cause" for the Court to allow an extension of time for service of Defendant Hammack in 1990, it is now 1997, on the eve of trial, and Plaintiff has been represented by counsel since 1990. The Court cannot, at this point in time, overlook the Plaintiffs failure to serve the Defendants with a complaint that was filed in 1990. As such, the Court grants the Defendants' motion to dismiss the complaint as against Defendants Hammack and Sheridan pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## II. SUMMARY JUDGMENT ON PLAINTIFF'S EIGHTH AMENDMENT CLAIM

Plaintiff alleges two causes of action in his complaint based on Constitutional violations. The first alleges a violation of the Eighth Amendment, and the second alleges a violation of the First Amendment and the Fourteenth Amendment. As a preliminary matter, the Court finds that Plaintiff's complaint alleges no facts which would support the existence of either a First Amendment claim or a Fourteenth Amendment Due Process Claim.[2] Thus, the Court finds that even liberally construed, the Plaintiffs complaint only properly alleges a violation of the Eighth Amendment to the United States Constitution.

As stated, the Defendants move for summary judgment on the Plaintiff's Eighth Amendment Constitutional claim pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the Plaintiff has failed to make out an Eighth Amendment claim as a matter of law, or in the alternative that the Defendants are immune from suit under the doctrine of qualified immunity.

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of material fact is one that could be decided in favor of either party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To survive a motion for summary judgment the non-movant must do more than present evidence that is merely colorable, conclusory, or speculative. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The non-movant must demonstrate that there are issues of fact that must be decided by a fact finder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Thus, the Court will evaluate whether a genuine issue of material fact exists with respect to the relevant standard for establishing an Eighth Amendment violation.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," which includes punishments involving the "unnecessary and wanton infliction of pain"

**2.** Nor do Plaintiff's papers make reference to the existence of these claims.

*Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). In the context of providing medical care to prisoners, a prison official violates the Eighth Amendment when he or she is deliberately indifferent to a serious medical need of a prisoner. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The deliberate indifference standard found in *Estelle* embodies both an objective and subjective prong. First, the alleged deprivation must be, in objective terms, sufficiently serious. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citing *Farmer v. Brennan,* 511 U.S. 825, 837–38, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)). Second, the prison official must act with a sufficiently culpable state of mind. Specifically, a prison official must subjectively know of, and disregard an excessive risk to inmate health or safety. *Hathaway,* 37 F.3d at 66. Thus, mere negligence or medical malpractice does not constitute a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291–92.

Since the Plaintiff makes both general and specific allegations against the various Defendants, the Court will evaluate each Defendant in turn, based on the conduct attributable to him or her that is established in the record.

### A. Nurse Siskavich [3]

█ The only conduct alleged of Nurse Siskavich is that she treated Plaintiff on the day he was initially injured by simply providing him with an ice pack, elevating his leg, and calling a physician. The Court finds that the record indicates that Nurse Siskavich also applied an ace bandage to the Plaintiff's knee and administered Motrin to the Plaintiff. The Court finds that even assuming Plaintiff's injury at that time was a sufficient-

ly serious medical need, no reasonable jury could find that Nurse Siskavich was deliberately indifferent to the Plaintiff's injury. As such, Defendants' motion for summary judgment is granted upon behalf of Defendant Siskavich.

### B. R.W. Spence

█ Plaintiff alleges that Defendant Spence was the Health Services Administrator at CCF and (1) let the Plaintiff perform his physical therapy on the prison Universal weight machine without supervision, and (2) denied the Plaintiff additional unspecified physical therapy. The Defendants argue that while at CCF, the only physical therapy prescribed to the Plaintiff was on the Universal weight machine. Furthermore, the Defendant argues that the fact that the Plaintiff was unsupervised in his physical therapy at best could only amount to mere negligence.

Even assuming that individuals doing leg extensions on a Universal weight machine have a serious medical need for supervision,[4] the record is devoid of any involvement of R.W. Spence in the failure to supervise the Plaintiff in his therapy. Plaintiff has offered no evidence for which a jury could properly infer that R.W. Spence was involved or responsible for the failure to supervise the Plaintiff in his physical therapy. The conclusory allegations set forth in the Plaintiffs complaint are wholly insufficient to satisfy his summary judgment burden. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, the Court finds Defendants' motion for summary judgment should be granted as to Plaintiff's Eighth Amendment constitutional claim as against R.W. Spence.

### C. Dr. Quellman

█ Plaintiff does not allege any specific conduct by Dr. Quellman other than that he

---

3. Ms. Siskavich is now known as Ms. Collins.

4. Plaintiff alleges that the leg extensions he performed on the Universal weight machine further aggravated and irreparably damaged his knee. This contention is not supported by the record before the Court, which reflects that after the Plaintiff's original injury, he repeatedly engaged in athletic activities, often against the advice of prison medical personnel. Further, it appears

that at least three different doctors recommended leg extension exercises utilizing the Universal weight machine as physical therapy to strengthen the knee. It would appear that this type of exercise is a common type of therapy for knee injuries. Thus, it is doubtful whether the prescription of this exercise as therapy could ever amount to medical malpractice, let alone cruel and unusual punishment.

made certain diagnoses and recommendations which other unnamed defendants allegedly failed to follow through on. Accordingly, Defendants argue that Plaintiff's complaint fails to allege any unconstitutional conduct on the part of Dr. Quellman.

■ The Court agrees that the complaint makes no specific allegations of unconstitutional conduct that can be attributable to Dr. Quellman. Furthermore, the record reflects that Dr. Quellman's involvement in the Plaintiff's treatment amounted to several examinations of the Defendant in 1986, in which he requested an orthopedic consult for the Plaintiff at Albany Medical Center, recommended that the Plaintiff be provided with a hinged knee brace, and prescribed the aforementioned physical therapy four times a week. Based on this record, the Court finds that no reasonable jury could find that this conduct amounted to deliberate indifference to the Plaintiff's medical needs. Thus, the Defendants' motion for summary judgment is granted with respect to Defendant Dr. Quellman.

### D. Dr. Goldman and Dr. Rosner

■ Defendants Goldman and Rosner were both employed part-time by SCF for the provision of health services to the facility. Plaintiff's specific allegation against Dr. Goldman is that he "mysteriously" discharged the Plaintiff from the prison infirmary in July of 1988, the day after Dr. Rosner had admitted him. The only specific allegation made against Dr. Rosner is that he ordered the Plaintiff to discontinue using weights for his physical therapy because he felt it was aggravating Plaintiff's knee injury, rather than helping it. In general, the Plaintiff alleges that both Defendants failed to provide proper medical care and adequate medical treatment. Again, Defendants argue that neither the allegations in the complaint, nor the entire record support the existence of a constitutional violation by either of these Defendants.

The record reflects that while at SCF, Defendants Goldman and Rosner treated the Plaintiff no fewer that thirty times between December of 1987 and the Plaintiff's knee operation in March of 1989. Additionally, the Plaintiff was treated at least twenty-eight other times by other personnel in the infirmary during that period. Of those visits, the Plaintiff was treated with pain medication no fewer that forty times. In addition thereto, Dr. Goldman and Dr. Rosner requested and received repeated out-of-facility orthopedic consults for the Plaintiff. It is also of significant note that during this time period the Plaintiff's medical records indicate he refused recommended medical treatment four times and engaged in athletics at least five times. Plaintiff does not dispute these records or the events contained therein. Thus, the Court finds that the record reflects that the medical personnel at SCF and specifically Dr. Goldman and Rosner provided timely and attentive care and treatment to the Plaintiff's medical needs. As such, the Court finds that no reasonable jury could find that this conduct, nor the specific conduct alleged could amount to deliberate indifference to the Plaintiff's serious medical needs.

### E. Dr. Tufau

■ Plaintiff alleges that following his first knee operation, and after his transfer to Sullivan Correctional Facility ("SUCF"), that Dr. Tufau deliberately avoided seeing the Plaintiff while he was admitted to the prison infirmary, even though the Plaintiff requested to see him. Defendants argue that even if true, such conduct does not amount to deliberate indifference.

The record indicates that between the Plaintiff's transfer to SUCF in May of 1989 and the Plaintiff's second knee operation on November 16, 1989, Dr. Tufau saw the Plaintiff nine times and requested outside consults three times. In addition, Plaintiff was seen an additional thirteen times by infirmary staff who treated the Plaintiff for complaints related to his knee. The Court finds that this record can support no inference that Dr. Tufau or the health care providers as SUCF were deliberately indifferent to the Plaintiff's medical needs. As such, summary judgment is granted with respect to the Eighth Amendment claim brought against Dr. Tufau.

### III. PLAINTIFF'S STATE CLAIM

■ Plaintiff's third cause of action purports to bring a 42 U.S.C. § 1983 claim against all the Defendants based on violation of state law, specifically unspecified NYS-DOC regulations. It is axiomatic that 42 U.S.C. § 1983 does not provide a right of action for violations of state law. *See e.g., Brown v. Dunne,* 409 F.2d 341 (7th Cir.1969). Thus, Plaintiff's third cause of action must be dismissed.

### Conclusion

After considering the arguments made by the parties, the entire record, and the applicable legal standards, the Court finds that the Defendants' motion should be granted, and the Plaintiff's action should be dismissed. Accordingly, it is hereby

ORDERED that the Defendants' motion to dismiss the complaint as against Defendants Sheridan and Hammack for lack of personal jurisdiction is GRANTED, and the complaint is DISMISSED as against those two Defendants. Further, it is

ORDERED that Defendants' motion for summary judgment as to all the Defendants on Plaintiff's remaining claims is GRANTED in its entirety.

**IT IS SO ORDERED.**